Filed 11/28/23  P. v. Marman CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DESHON MARMAN,<br><br>    Defendant and Appellant. | A164642<br>(San Francisco<br>City & County Super. Ct.<br>No. 20010198)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

**THE COURT\*:**

It is ordered that the unpublished opinion filed herein on November 13, 2023, be modified as follows:

On page 6, the last sentence of footnote 5, the words "15 years ago" are deleted and replaced with "within the 15 years preceding Marman's motion to dismiss."

The petition for rehearing filed November 20, 2023, is denied.  There is no change in the judgment.

Dated: _____                    _____

---

\* Tucher, P. J., Fujisaki, J. and Rodríguez, J. participated in the decision.

1

Filed 11/13/23  P. v. Marman CA1/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DESHON MARMAN,<br><br>    Defendant and Appellant. | A164642<br><br>(San Francisco City & County<br>Super. Ct. No. 20010198) |

A jury convicted Deshon Marman of several felonies, including resisting an officer with attempted removal of a firearm.  Marman appeals.  He argues the trial court violated his right to a speedy trial under the federal Constitution, and that the court committed prejudicial error by failing to give a mistake-of-fact jury instruction.  We affirm.

## BACKGROUND

The prosecution charged Marman with several felonies, including resisting an officer with attempted removal of a weapon; resisting, obstructing, or delaying a peace officer with removal of a non-firearm weapon; threatening an executive officer; and battery with injury on a peace officer.[1]

---

[1] We provide an overview of the evidence offered at trial here and elaborate further in the discussion of Marman's claims.

1

At trial, the parties offered the following evidence: In September 2020, a grocery store security guard was patrolling when she noticed Marman hiding cheese under his shirt. He was wearing a mask, but it was not covering his nose and mouth. She asked him to leave and escorted him outside. He returned, however, shouted obscenities at the guard, punched her in the face, and left. The guard called 911 and followed Marman for 20 minutes while waiting for the police to arrive.

San Francisco Police Officers Talent Tang and Robert Duffield responded to the call in a marked police car. A few blocks from the store, they saw the guard. She flagged them down and joined them in the police car; half a block later, the guard spotted Marman. Tang parked behind Marman and approached. Tang and Duffield were both uniformed, but they did not otherwise identify themselves as police officers or activate their car's lights or siren.

After a brief chase, Marman grabbed Tang, lifted him into the air, and threw him to the ground. Duffield joined the fracas. Marman grabbed Duffield's baton, and they struggled for control until it flew out of reach. Marman bit Duffield's forehead and reached for Tang's gun. He grabbed the gun's grip and tried to pull the gun from its holster. At the same time, Marman bit Tang's neck hard, leaving a bleeding laceration that scarred. Only after a bystander intervened were the officers able to subdue and arrest Marman. Tang's body camera footage — admitted into evidence and played for the jury — was consistent with the officers' testimony.

Marman testified he had no or poor memory of the brawl. He was inadvertently shot in 2014, and he had been suffering flashbacks ever since. A defense expert testified Marman met the criteria for a post-traumatic stress disorder (PTSD) diagnosis, and a person suffering from PTSD is more

likely to experience a "fear response" if their brain perceives something as a threat. Among other things, such a response significantly impairs a person's ability to think logically and control their behavior. After the response subsides, a person has no or poor memory of the event.

A jury convicted Marman of resisting an officer with attempted removal of a firearm; resisting, obstructing, or delaying a peace officer with removal of a non-firearm weapon; threatening an executive officer; and battery with injury on a peace officer. The trial court sentenced him to four years in prison, but suspended execution of the sentence and placed him on probation for two years. The court awarded presentence custody credit.

## DISCUSSION

Marman contends the trial court violated his Sixth Amendment right to a speedy trial by denying his motion to dismiss, and that the court prejudicially erred by failing to give a mistake of fact jury instruction. We address each argument in turn.

I.

Before addressing the merits of Marman's Sixth Amendment claim, we set forth the following additional background:

Marman waited almost one year for trial. Officers arrested him on September 18, 2020 — in the midst of the COVID-19 pandemic — and the prosecution filed a felony complaint four days later. At his November 16 arraignment, Marman did not waive time for trial, and the trial court set trial for January 8, 2021.[2]

---

[2] Marman remained in custody until November 18, 2020 — when the trial court released him on pretrial diversion. He was returned to custody on December 15.

3

Thereafter, the case was continued 14 times — most of which were for less than two weeks. For example, on January 15, 2021, the trial court continued the trial for "good cause . . . due to exceptional and extraordinary circumstances, under Federal, State and Local emergency proclamations and in consideration of public health due to the Covid-19 pandemic." On July 30, the court continued the trial to November and renewed its good cause finding. The court added, "on June 18th we opened up all trial courtrooms due to the lifting of the social distancing requirement which previously prevented use of those courtrooms for jury trial. . . . [¶] We currently have 382 felony no time waiver trials with 196 defendants in custody and another 149 misdemeanor no time waiver trials with 29 defendants in custody." On August 9, the court advanced the trial to September 30.

On August 11, 2021, Marman filed a motion to dismiss, arguing the 11-month delay in bringing his case to trial violated his right to a speedy trial under the federal Constitution. In opposition, the prosecution argued the pandemic was the cause of the court backlog and asked the trial court to take judicial notice of its own pandemic-related procedures and the emergency orders issued by state and local governments since the pandemic began. The court denied Marman's motion "pursuant to Penal Code 1382 and . . . constitutional speedy rights grounds," granted the prosecution's request for judicial notice, and denied the defense's request for judicial notice.[3] On September 3, the court advanced the trial to September 7. The defense requested a short continuance, and trial began September 16.[4]

---

[3] Marman is not challenging the trial court's ruling under Penal Code Section 1382.

[4] The prosecution requested a continuance on July 16, and it was granted.

We turn to the merits of Marman's claim.  The Sixth Amendment to the federal Constitution guarantees criminal defendants a speedy trial.  (U.S. Const., 6th Amend.)  " '[T]he right to a speedy trial is "fundamental" and is imposed by the Due Process Clause of the Fourteenth Amendment on the States.' " (*People v. Williams* (2013) 58 Cal.4th 197, 232 (*Williams*)).)  The right's purpose is " ' "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." ' " (*Hernandez-Valenzuela v. Superior Court* (2022) 75 Cal.App.5th 1108, 1122 (*Hernandez-Valenzuela*).)

In analyzing a federal speedy trial claim, we consider four factors set forth by the United States Supreme Court: length of delay, reason for the delay, a defendant's assertion of their right, and prejudice to defendant. (*Barker v. Wingo* (1972) 407 U.S. 514, 530.)  None of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant." (*Id.* at p. 533.)  It is the defendant's burden to establish a speedy trial violation under these factors. (*Williams*, *supra*, 58 Cal.4th at p. 233.)

We review the grant or denial of a speedy trial motion for abuse of discretion. (*People v. Buchanan* (2022) 85 Cal.App.5th 186, 191.)  The " 'deference [this standard] calls for varies according to the aspect of a trial court's ruling under review.' " (*Ibid.*, brackets in original.)  "Under an abuse of discretion standard, ' "[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and

5

capricious." ' "[5] (*People v. Superior Court* (*Vasquez*) (2018) 27 Cal.App.5th 36, 55, disapproved on other grounds in *Camacho v. Superior Court* (2023) 15 Cal.5th 354, 392.)

The first *Barker* factor — length of the delay — "encompasses a 'double enquiry.' [Citation.] 'Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, . . . since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. [Citation.] This latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time.' " (*Williams*, *supra*, 58 Cal.4th at p. 234.) As postaccusation delay approaches one year, courts treat it as " 'presumptively prejudicial.' " (*Doggett v. United States* (1992) 505 U.S. 647, 652, fn. 1.) Here, Marman's delay was " 'presumptively prejudicial' " since, at the time of his motion, he'd been waiting eleven months. (*Ibid*.) The first factor favors Marman. (*Williams*, at p. 234.)

---

[5] We disagree with Marman's contention that the trial court did not use its discretion in making its ruling. The record shows the court considered the briefing and evidence submitted by the parties and the pandemic's effect on the operations of the court. The court confirmed it was basing its decision on Marman's motion, the prosecution's opposition, and the prosecution's exhibits on the record. At the prosecution's request, the court took judicial notice of all statewide and local emergency orders limiting its operation during the pandemic. It also denied the defense's request for judicial notice of operations that occurred at the Civic Center Courthouse 15 years ago.

The second factor — reason for the delay — requires us to ask " 'whether the government or the criminal defendant is more to blame for th[e] delay.' [Citation.] A delay meant to hamper the defense weighs heavily against the prosecution, while more neutral reasons such as negligence or overcrowded courts weigh less heavily. [Citation.] Delays attributable to the defendant are effectively forfeited under the standard waiver doctrine." (*People v. Bradley* (2020) 51 Cal.App.5th 32, 41, disapproved on another ground in *Camacho v. Superior Court*, *supra*, 15 Cal.5th at p. 392.)

Here, the reason for delay weighs against finding a constitutional violation. We join other courts in concluding 2020 and 2021 delays were due to the COVID-19 pandemic. (*Hernandez-Valenzuela, supra*, 75 Cal.App.5th at pp. 1127–1129, 1134; *Elias v. Superior Court* (2022) 78 Cal.App.5th 926, 942–943 [concluding "a year of continuances based on the COVID-19 pandemic" from May 2020 until June 2021 were "valid"].) For example, in *Hernandez-Valenzuela*, we considered delays in this same trial court from September 2020 to March 2022 and found they were "not unreasonable" because the "court's backlog . . . was the result of exceptional circumstances arising from the COVID-19 pandemic." (*Hernandez-Valenzuela*, at pp. 1127–1129, 1134.) We found that none of the various health and safety orders delaying trials before the court's reopening in June 2021 "were the fault of the prosecution or respondent court but rather the unprecedented effects of the pandemic." (*Id*. at p. 1128.) In addressing delays in the months after the court reopened, we noted "after fifteen months of diminished or no capacity to conduct criminal jury trials, it was not surprising that [the court] confronted an ' "inordinate number of cases for court disposition." ' " (*Ibid*.) "[I]t was not unreasonable for respondent court to not have addressed its backlog within seven, nine, or twelve weeks of reopening . . . . Moreover, it was not

7

unreasonable after those fifteen months for the court to need some latitude to determine how best to address its backlog, while the pandemic persisted despite the full reopening." (*Ibid.*)

Marman provides no compelling reason for us to reach a different conclusion here. Eight of the 11 months Marman waited for trial stemmed directly from the COVID-19 shutdown and preceded the trial court's reopening. During that period, the court explicitly continued Marman's trial due to "exceptional and extraordinary circumstances, under Federal, State and Local emergency proclamations and in consideration of public health due to the Covid-19 pandemic." "Health quarantines to prevent the spread of infectious diseases have long been recognized as good cause for continuing a trial date." (*Stanley v. Superior Court* (2020) 50 Cal.App.5th 164, 169.) " 'A contrary holding would require trial court personnel, jurors, and witnesses to be exposed to debilitating and perhaps life-threatening illness. Public health concerns trump the right to a speedy trial.' " (*Ibid.*)

The remaining three months of delay stemmed from the backlog COVID-19 created in the trial court. (*Hernandez-Valenzuela, supra,* 75 Cal.App.5th at p. 1128.) The court was working through 382 felony cases with speedy trial implications in those seven weeks. The continuances in June and July 2021 occurred within the first six weeks of reopening. (*Ibid.*) Moreover, unlike the defendants in *Hernandez-Valenzuela,* Marman received his trial within 12 weeks of reopening. (*Id.* at p. 1121, 1128.) On this record, the court could reasonably conclude the delays in bringing Marman's case to trial were attributable to the COVID-19 pandemic, not the prosecution or the court.[6]

_____

[6] Marman suggests COVID-19, when viewed in hindsight, "may more accurately be described as a recurrent or even a chronic phenomenon." Even

The Attorney General concedes the third factor — the defendant's assertion of the right — favors Marman as he consistently maintained his demand for a speedy trial.

The fourth factor is prejudice. (*Barker v. Wingo*, *supra*, 407 U.S. at p. 530.) The harm caused by unreasonable delay between accusation and trial may involve " 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence. [Citations.] Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.' " (*Doggett v. United States*, *supra*, 505 U.S. at p. 654; accord, *People v. Horning* (2004) 34 Cal.4th 871, 892.) But Marman must show more than presumptive prejudice. "[P]resumptive prejudice does not alone entitle a defendant to relief; it is only 'part of the mix of relevant facts, and its importance increases with length of delay.' " (*Horning*, at p. 894.)

Marman offers several reasons why the delay was prejudicial. None are persuasive. For example, he asserts the delay may have harmed his defense because, had the trial occurred sooner, he might have had a better memory of the attack. But his theory of the case belies this assertion. At trial, Marman argued he was physically incapable of forming a memory of the attack because of a heightened fear response from symptoms associated with PTSD.

Next, Marman contends his delay was prejudicial because he spent nearly a year in custody awaiting trial in pandemic-related lockdown

---

if we were inclined to agree, the trial court made its decision in August 2021. We review that decision for abuse of discretion, and we cannot overturn it because we have the benefit of hindsight two years later.

conditions. Although we are sympathetic to the conditions of Marman's wait, as the *Elias* court explained, "he [was] in the same position as hundreds of other in-custody defendants awaiting trial due to COVID-19 pandemic delays. Lengthy pretrial incarceration ' " 'unenhanced by tangible impairment of the defense function and unsupported by a better showing on the other [*Barker*] factors than was made here, does not alone make out a deprivation of the right to a speedy trial.' " ' " even when the defendant "objected to the trial continuances." (*Elias v. Superior Court*, *supra*, 78 Cal.App.5th at p. 943.) The same is true here.

Finally, Marman contends the delay was prejudicial because his time in pretrial custody does not match the seriousness of his crimes. We disagree. Marman assaulted two police officers and fought for their weapons. He was so persistent in his attack it took bystander intervention to stop it. His attack left one officer scarred, and he nearly gained control of a firearm. His pretrial custody does not outweigh the seriousness of his crimes.

Balancing the four factors, we find no abuse of discretion in the trial court's determination that Marman did not establish a violation of his Sixth Amendment right to a speedy trial.

## II.

Next we address Marman's contention that the trial court erred by failing to give CALCRIM No. 3406, the pattern jury instruction on mistake of fact. The Attorney General concedes the court should have given the instruction, but argues the error was harmless. We agree.

CALCRIM No. 3406 provides " '[t]he defendant is not guilty . . . if [he] . . . [reasonably] did not know a fact.' " (*People v. Speck* (2022) 74 Cal.App.5th 784, 789.) A trial court's error in failing to instruct on the mistake-of-fact defense is reversible only if it is reasonably probable a more

favorable outcome would have been achieved had the error not occurred. (*People v. Hanna* (2013) 218 Cal.App.4th 455, 462–463.) " ' "In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result." ' " (*People v. Larsen* (2012) 205 Cal.App.4th 810, 831, italics omitted.) "We also consider the instructions as a whole, the jury's findings, and the closing arguments of counsel." (*Ibid.*)

It is not reasonably probable Marman would have received a more favorable outcome had the trial court given the mistake-of-fact instruction. Overwhelming evidence supports Marman's convictions. Tang's body camera footage supported the officers' account of Marman's attack on them and showed Marman coming face to face with Tang before tackling him. Both officers were in uniform and approached Marman in a marked police car. The jury instructions given required the jury to find Marman knew his victims were police officers. For all the crimes of which Marman was convicted, CALCRIM No. 252 specifically instructed the jury had to find Marman "knew, o[r] should have known, that an alleged victim was a peace officer . . . ." The court reiterated the required mental state for each specific crime. CALCRIM No. 2654 required the jury to find Marman "knew or reasonably should have known that Officer Tang was a peace officer performing his duties." The jury had to make the same finding to convict Marman of taking an officer's baton, resisting officers, and battering officers. Moreover, defense counsel's closing argument emphasized Marman's state of mind during and before the assault.

11

On this record, it is not reasonably probable Marman would have achieved a more favorable outcome had the trial court given the mistake-of-fact instruction.

## DISPOSITION

The judgment is affirmed.

                                        _____
                                        Rodríguez, J.


I CONCUR:


_____
Fujisaki, J.


A164642

**TUCHER, P. J., Concurring.**

The two defendants whose speedy trial motions we considered in *Hernandez-Valenzuela v. Superior Court* (2022) 75 Cal.App.5th 1108 both had September 2021 trial dates continued on account of court congestion. (*Id.* at pp. 1119–1120.) In dissenting from the denial of writ relief for those individuals, I cited the shocking statistic that "respondent court sent out *only a single in-custody felony defendant for trial during the entire month of September*." (*Id.* at p. 1142 (dis. opn. of Tucher, P. J.).) Apparently, Marman was that defendant. Because his trial went forward on September 7, 2021, and because delay until that date has not been shown to have caused him substantial prejudice, I join the majority in concluding that the trial court did not abuse its discretion in refusing to dismiss Marman's case, even as I remain concerned about the pace at which the San Francisco Superior Court acted to clear the backlog of criminal cases after it "return[ed] to 'pre-pandemic' levels of service" at the end of June 2021. (*Id.* at p. 1137.)

TUCHER, P. J.

A164642